UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEMICKO BILLIE THOMAS, | ) |
| Plaintiffs, | ) Case No. C05-762-RSM-JPD |
| v. | ) |
| MICHAEL P. MAGAN, | ) REPORT AND RECOMMENDATION |
| Defendant. | ) |

## INTRODUCTION AND SUMMARY CONCLUSION

This is a *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff alleges in his complaint that defendant Michael Magan, a detective with the Seattle Police Department, violated plaintiff's constitutional rights during the course of his investigation of a Seattle jewelry store robbery which ultimately lead to plaintiff's conviction on robbery, kidnaping, and firearms charges. Defendant Magan now moves for summary judgment. Plaintiff, despite having been advised on at least three occasions of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), has filed no response to defendant's motion.[1] Defendant's motion for summary judgment

---

[1] Plaintiff previously requested, and was granted, a 60 day extension of time to conduct discovery and to file a response to defendants' summary judgment motion. (*See* Dkt. Nos. 30, 36, and 37.) On July 17, 2006, the Court received from plaintiff a copy of a letter sent to defendant's

REPORT AND RECOMMENDATION
PAGE - 1

1  is now ripe for review.  This Court, having reviewed defendant's motion, and the balance of the
2  record, concludes that defendant's motion for summary judgment should be granted.

## FACTUAL BACKGROUND

Plaintiff's claims arise out of his arrest and prosecution on robbery, kidnaping, and firearms charges.  On December 28, 2002, the Michael Farrell Jewelry Store, located in Seattle, Washington, was robbed.  (Dkt. No. 33, Ex. B at 2.)  An owner of the store and an employee were in the store at the time of the robbery.  (*Id.*)  The robber forced the two women into the backroom at gunpoint and handcuffed them together.  (*Id.*, Ex. B at 3.)  The robber took an estimated $300,000 worth of jewelry before fleeing the store.  (*Id.*)

Defendant Magan was assigned to investigate the robbery.  (*See id.*, Ex. B at 2.)  Upon interviewing the victims, police obtained a description of the robber.  (*Id.*.)  They also learned that two telephone calls had been received at the store prior to the robbery.  (*Id.*)  In both instances, the caller was male and asked for "Michael," another of the store's owners.  (*Id.*)  The caller identification at the store recorded the telephone numbers from which these two calls originated.  (*Id.*)  Detective Magan was able to trace the telephone numbers through the Seattle Police Department Communications 9-11 telephone system.  (*Id.*, Ex. B at 3.)  One of the numbers was determined to be a pay telephone located at a 7-Eleven store several blocks from the jewelry store.  (*Id.*)  Defendant Magan dispatched a patrol officer to seize the surveillance tapes from the surveillance camera located inside the 7-Eleven store.  (*Id.*)

---

counsel advising them of his intent to file a motion requesting an additional 30 day extension of time to respond to the pending summary judgment motion.  However, to date, plaintiff has filed no such motion.  Moreover, defendant advises the Court that plaintiff has conducted no discovery in this matter.  It thus appears from the record that plaintiff has elected not to pursue this action further.

REPORT AND RECOMMENDATION
PAGE - 2

1     While viewing the surveillance tapes, defendant Magan observed a large black male, matching
2 the description provided by the robbery victims, entering the 7-Eleven store just prior to the time that
3 the first telephone call was received at the jewelry store. (*Id.*, Ex. B at 4.) Detective Magan printed
4 still photographs of the possible suspect and of a suspect vehicle that also appeared on the surveillance
5 tape. (Dkt. No. 33, Ex. B at 4.) He thereafter showed the photograph of the possible suspect to the
6 victims. (*Id.*) Each of the victims identified the individual in the photograph as the robber. (*Id.*)

7      Defendant Magan next prepared a criminal information bulletin for distribution to local law
8 enforcement agencies. (*Id.*) The bulletin included photographs, obtained from the surveillance video,
9 of the suspected robber as well as of the suspect's car. (*Id.*) Defendant Magan thereafter received a
10 message from a fellow SPD detective identifying the individual in the surveillance photo as Demicko
11 Thomas, the plaintiff in this action. (*Id.*) Based on this information, defendant Magan reviewed
12 plaintiff's most recent King County Jail booking photo and compared it to the surveillance photo.
13 (*Id.*) He concluded that they were the same individual. (*Id.*) Defendant Magan then prepared a photo
14 montage containing plaintiff's booking photo, as well as photographs of five other individuals and
15 showed it to the jewelry store owner. (*Id.*, Ex. B at 4-5.) The store owner identified plaintiff as the
16 robber. (*Id.*, Ex. B at 5.)

17     As part of his ongoing investigation, defendant Magan obtained from Department of
18 Corrections and Department of Licensing records a current address for plaintiff. (*Id.*) He
19 subsequently drove to plaintiff's residence where he observed the vehicle which had appeared in the 7-
20 Eleven surveillance video. (*Id.*) On January 2, 2003, defendant Magan prepared an affidavit for a
21 search warrant in which he requested permission to search plaintiff's residence and the vehicle which
22 appeared in the surveillance photograph, and in which he also requested permission to seize plaintiff.
23 (*Id.*) The affidavit was approved and signed by a King County Deputy Prosecuting Attorney, and was
24 then approved and signed by a King County Superior Court Judge. (*See* Dkt. No. 12, Attachment A

25
26 REPORT AND RECOMMENDATION
PAGE - 3

at 5-6.)  The Judge also signed the search and arrest warrant.  (*Id*., Attachment B.)

Plaintiff was arrested the same day by SPD SWAT officers.  (Dkt. No. 33, Ex. B at 6.) Plaintiff was thereafter transported to the SPD robbery office where defendant Magan later attempted to interview him.  (*Id*.)  Plaintiff was booked into the King County Jail for investigation of robbery.  (*Id*., Ex. A.)  On January 7, 2003, plaintiff was charged in King County Superior Court with first degree robbery and first degree kidnaping.  (Dkt. No. 32, Ex. 1 at 20.)  Plaintiff was convicted on first degree robbery, first degree kidnaping, and firearms charges on June 24, 2004.  (*Id*., Ex. 1 at 10, 20-21.)  Plaintiff was sentenced to over 60 years in prison.  (*Id*. at 21.)

Plaintiff filed the instant action on April 21, 2005.  (Dkt. No. 1.)  Plaintiff's initial submission included two civil rights complaints, one filed pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and one filed pursuant to 18 U.S.C. §§ 241, 242.  (*See* Dkt. No. 8.)  Plaintiff indicated in those original complaints that he intended for this to proceed as a "joint action."  (*Id*.)  After reviewing these initial documents, this Court ordered that plaintiff's complaint under 18 U.S.C. §§ 241, 242 be stricken as it contained no viable request for relief.  (Dkt. No. 10.)  The Court also granted leave to plaintiff to file an amended complaint setting forth his claims against defendant Magan.  (*Id*.)

Plaintiff subsequently filed an amended complaint in which alleges that defendant Magan violated his constitutional rights when he (1) made false statements in the affidavit for search warrant which led to plaintiff's arrest; (2) failed to read plaintiff his Miranda rights prior to interviewing him on January 2, 2003; and, (3) employed improper procedures to obtain identification evidence.  (Dkt. No. 12.)

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving

1  party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is a fact

2  relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

3  248 (1986).  Genuine issues of material fact are those for which the evidence is such that "a reasonable

4  jury could return a verdict for the nonmoving party."  *Id*.

5        In response to a properly supported summary judgment motion, the nonmoving party may not

6  rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a

7  genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements

8  essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence is insufficient to create a

9  factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on summary judgment, the court does not

10 weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine

11 issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

12                          <u>Warrant Affidavit</u>

13       Plaintiff claims that defendant Magain violated his constitutional rights when he made false

14 statements in, and omitted information from, a search warrant affidavit which led to plaintiff's arrest.

15 Plaintiff asserts that had defendant Magan not intentionally falsified the affidavit, probable cause to

16 search plaintiff's residence and vehicle, and to arrest plaintiff, would not have been established and

17 plaintiff would not have been unconstitutionally arrested and incarcerated.

18       Defendant argues in his summary judgment motion that plaintiff's claim that defendant Magan

19 made false statements in the affidavit for search warrant must be dismissed because the claim

20 constitutes a collateral attack on plaintiff's conviction and is therefore barred by *Heck v. Humphrey*,

21 512 U.S. 477 (1994).  In *Heck*, the United States Supreme Court held that a § 1983 claim that calls

22 into question the lawfulness of a plaintiff's conviction or confinement does not accrue "unless and

23

24

25
REPORT AND RECOMMENDATION
26 PAGE - 5

until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id*. at 489.

While it is not entirely clear from the amended complaint what plaintiff believes the alleged falsifications or omissions to be, it appears that plaintiff's concern may have been that, in his view, the warrant affidavit did not accurately set forth the manner in which defendant Magan went about obtaining identification evidence from the victims, a process which plaintiff contends was unduly suggestive, and that it did not contain an accurate description of the suspect, as provided to police by the victims. Regardless of whether the Court has accurately identified plaintiff's concern regarding the content of the warrant affidavit, it is clear that the thrust of plaintiff's argument is that, absent what he believes was an illegally obtained warrant, he would not have been arrested and incarcerated. A decision in plaintiff's favor on such a claim would necessarily call into question the validity of his conviction. Accordingly, defendant is entitled to summary judgment with respect to this claim.

<u>Cognizability of Remaining Claims</u>

As to plaintiff's two remaining claims, defendant argues in his motion for summary judgment that the claims are not cognizable under § 1983, and that they constitute impermissible collateral attacks on plaintiff's conviction.

**1.   *Miranda* Warnings**

Plaintiff claims that defendant Magan violated his constitutional rights when he failed to read plaintiff *Miranda* warnings before interviewing him on January 2, 2003, following his arrest. However, the United States Supreme Court has recognized that the procedural safeguards set forth in *Miranda* are not themselves rights protected by the Constitution but are, instead, measures to prevent violations of the right against compulsory self-incrimination. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003). As failure to provide a *Miranda* warning does not, by itself, amount to a constitutional

REPORT AND RECOMMENDATION
PAGE - 6

violation, plaintiff's claim that defendant Magan failed to read him his *Miranda* warnings does not constitute a cognizable claim for relief under § 1983.[2]

**2.      *Identification Procedures***

Plaintiff claims that defendant Magan employed improper procedures to obtain identification evidence from the victims.  However, as in the case of asserted *Miranda* violations, claims that identification procedures were unduly suggestive do not amount to a constitutional infringement which is cognizable under § 1983.

The Supreme Court, in *Manson v. Brathwaite*, 432 U.S. 98 (1977) and *Stovall v. Denno*, 388 U.S. 293 (1967), established procedural safeguards to protect against the admission at trial of unreliable identification evidence.  However, as explained by the Seventh Circuit in *Hensely v. Carey*, 828 F.2d 646 (7th Cir. 1987), *Brathwaite* and *Stovall* did not establish a constitutional right which guarantees non-suggestive identification procedures.  *Hensley*, 828 F.2d at 648-49.  Rather, the Supreme Court established "a prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of the core right and not the prophylactic rule that should be actionable under § 1983."  *Id.  See also*, *Hutsell v. Sayre*, 5 F.3d 996, 1004-5 (6th Cir. 1993); *Haupt v. Dillard*, 794 F.Supp. 1480, 1489-90 (D.Nev. 1992), reversed in part on other grounds, *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994)(*as amended*).

As there is no constitutional right which guarantees non-suggestive identification procedures, defendant could not have violated plaintiff's constitutional rights merely by employing suggestive identification procedures.  And, to the extent plaintiff intends to allege a violation of his core right to

---

[2] Plaintiff does allege in his amended complaint that defendant violated the provisions of the Fifth Amendment which protect an individual from becoming a witness against himself.  Plaintiff fails, however, to make clear what facts he believes support that claim.  And, even assuming plaintiff had offered sufficient facts to suggest that defendant had violated his right to be free from compulsory self-incrimination, any such claim would be barred by *Heck* because it would necessarily call into question the validity of his conviction.

REPORT AND RECOMMENDATION
PAGE - 7

1  a fair trial based upon the alleged suggestive identification procedures, such a claim would be barred

2  by *Heck* as it would necessarily call into question the validity of his conviction.

3  CONCLUSION

4  Defendants have properly supported their summary judgment motion by pointing out through

5  argument, declarations, and exhibits that "that there [was] an absence of evidence to support"

6  plaintiff's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In light of the evidence

7  produced by defendant in support of his summary judgment motion, the burden was on plaintiff to

8  produce authenticated materials in opposition to the motion that "set forth specific facts showing that

9  there is a genuine issue for trial." Fed. R. Civ. P. 56(e); s*ee Celotex*, 477 U.S. at 323.  Plaintiff fails to

10  satisfy that burden and, thus, defendants are entitled to summary judgment.

11  Accordingly, this Court recommends that defendant's motion for summary judgment be

12  granted.  This Court further recommends that plaintiff's amended complaint be dismissed, without

13  prejudice, with respect to any claims which are currently barred by *Heck*, and without prejudice as to

14  any remaining claims.  A proposed order accompanies this Report and Recommendation.

15  DATED this 25th day of September, 2006.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge